No. 26-7070

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

SHIRLEY WEBER, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District for the Central District of California
No. 2:26-cv-12025-DOC
Hon. David O. Carter

# SIREN AND MI FAMILIA EN ACCIÓN'S MOTION TO INTERVENE

Tyler L. Bishop
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Ste. 2100
Seattle, WA 98101
Tel.: (202) 948-1135

Uzoma N. Nkwonta
Branden D. Lewiston
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 948-1135
unkwonta@elias.law

*Attorneys for Proposed Intervenors-Appellees SIREN and MFA*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 3

I. The federal government seeks to upend elections in California. .................... 3

II. DOJ sued and then rushed to appeal before a hearing below......................... 6

III. DOJ's demands imperil Proposed Intervenors' interests. ............................... 8

LEGAL STANDARD ................................................................................ 10

ARGUMENT ........................................................................................... 10

I. Proposed Intervenors are entitled to intervene as of right............................ 10

A. This motion is timely..................................................................... 10

B. Proposed Intervenors' interests are threatened by this action............. 11

1. The requested relief threatens Proposed Intervenors' voter engagement efforts and deters the voters they serve....... 11

2. The requested relief would make it more difficult for Proposed Intervenors to carry out their missions. .................... 14

C. The existing parties do not adequately represent Proposed Intervenors' interests. ....................................................................... 16

II. The Court should alternatively grant permissive intervention. ..................... 19

CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
No. 24-CV-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) .................. 12, 15

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ........................................................................11

*Barke v. Banks*,
No. 8:20-cv-358, 2020 WL 2315857 (C.D. Cal. May 7, 2020) ..........................17

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ......................................................................18

*Bellitto v. Snipes*,
No. 16-CV-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016)........................12

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022)................................................................................ 3, 17-18

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .........................................................................20

*Cameron v. EMW Women's Surgical Ctr.*,
595 U.S. 267 (2022)..........................................................................................10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ..........................................................................16

*Clark v. Putnam Cnty.*,
168 F.3d 458 (11th Cir. 1999) ........................................................................19

*Common Cause v. U.S. Dep't of Just.*,
No. 1:26-cv-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026)...............................4

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003)..........................................................................17

*GHP Mgmt. Corp. v. City of Los Angeles*,
339 F.R.D. 621 (C.D. Cal. 2021)......................................................................17

*Issa v. Newsom*,
No. 2:20-cv-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ................ 10, 15

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
No. 24-CV-01867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ................. 12, 15

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) ........................................................................ 17

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ........................................................................ 15

*March for Our Lives Idaho v. McGrane*,
697 F. Supp. 3d 1029 (D. Idaho 2023) ......................................................... 13

*Mi Familia Vota v. Fontes*,
719 F. Supp. 3d 929 (D. Ariz. 2024) ...................................................... 2, 13, 15

*Pub. Int. Legal Found., Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ....................................................... 18, 20

*Republican Nat'l Comm. v. Aguilar*,
No. 2:24-cv-518, 2024 WL 3409860 (D. Nev. July 12, 2024) ........................... 20

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........................................................................ 11, 15

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..................................................................................... 16, 18

*United States v. Benson*,
No. 1:25-CV-1148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) .................. 19

*United States v. Oregon*,
No. 6:25-cv-1666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) ................ 14, 18, 19

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) ............................................................. 2

*United States v. Weber*,
No. 26-1232 (9th Cir. argued May 19, 2026) ................................................... 20

*W. Expl. LLC v. U.S. Dep't of Interior*,
No. 3:15-CV-491, 2016 WL 355122 (D. Nev. Jan. 28, 2016) ............................16

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) ..........................................................................10

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ..........................................................................13

**Statutes**

Cal. Elec. Code § 3000.5 ..................................................................................8

**Rules**

Fed. R. Civ. P. 24 .................................................................................... 10, 19

**Other Authorities**

7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed.)..................16

Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Lab (Oct. 1, 2026), https://perma.cc/9JEX-B44C .........................................................5

Jasper Ward, *Trump Threatens California Officials with Imprisonment over Stance on Mail Ballots*, Reuters (Oct. 16, 2026), https://perma.cc/KVY7-5WCT...............................................................................................................3

Letter from Anonymous Whistleblower to Alex Padilla, U.S. Senator (Sep. 8, 2026), https://perma.cc/P9DF-8FSZ.................................................................6

Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sep. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html...............................................................................4

## INTRODUCTION

This lawsuit arises from the U.S. Department of Justice's demand that California election officials refuse to send mail ballots to, and segregate and refuse to tabulate mail ballots from, registered California voters whose names appear on a list created by the federal government. DOJ identified the targeted voters—over 20,000 in total—through an error-prone matching process, and it delivered the list to a local election official in Los Angeles on a thumb drive, with a password on a sticky note, which DOJ gave the official only 48 hours to review before DOJ filed its lawsuit seeking to compel California to do its bidding on October 15, 2026.

Proposed Intervenors Services, Immigrant Rights and Education Network ("SIREN") and Mi Familia en Acción ("MFA") (collectively, "Proposed Intervenors") moved to intervene on the same day to defend their interests and the interests of California voters they represent against DOJ's unprecedented assault on free and fair elections in California. DOJ then filed a request for a temporary restraining order requesting relief *by November 3*, and Proposed Intervenors promptly filed a proposed opposition. Those motions remain pending and were scheduled for a hearing on October 27, but DOJ rushed to appeal before that hearing.

Proposed Intervenors now move to intervene on appeal. Both are nonprofit organizations that represent and serve California voters. DOJ's requested relief threatens to disenfranchise Proposed Intervenors' members and constituents, many

of whom are naturalized citizens likely to be swept up in DOJ's error-prone citizenship-verification campaign. It also threatens to undermine Proposed Intervenors' voter registration and get-out-the-vote efforts because naturalized citizens and other eligible voters in communities Proposed Intervenors serve will likely be deterred from voting for fear of being misidentified as noncitizen voters and having their ballots ultimately discarded.

Proposed Intervenors are no strangers to combatting voter suppression, including from DOJ. MFA's sister organization—Mi Familia Vota—brought successful litigation challenging several provisions of Arizona's voting laws that would have harmed naturalized citizens; the court found the organization had standing to challenge those laws to protect its constituents and organizational mission. *See Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 984–85 (D. Ariz. 2024), *aff'd in part, vacated in part,* 129 F.4th 691 (9th Cir. 2025), *cert. granted sub nom. RNC v. Mi Familia Vota*, 146 S. Ct. 2799 (2026). SIREN successfully intervened and prevailed in DOJ's lawsuit demanding California's unredacted voter files over purported concerns with ineligible voters. *United States v. Weber*, 816 F. Supp. 3d 1168, 1179 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026).

The existing Defendants in this case do not adequately represent Proposed Intervenors' interest—as government officials, they must "bear in mind broader public-policy implications," whereas Proposed Intervenors seek to vindicate their

own interests "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). The existing Defendants must also consider DOJ's—and President Trump's—threats to imprison California election officials if they do not acquiesce to DOJ's demands.[1] Proposed Intervenors face no such countervailing considerations and will defend their interests with zeal. For these reasons and those below, Proposed Intervenors request the Court grant their motion to intervene.

Proposed Intervenors sought the parties' positions. The State Defendants take no position. The County Defendant does not oppose. DOJ did not reply.

## BACKGROUND

### I. The federal government seeks to upend elections in California.

On July 16, 2026, Secretary of Homeland Security Markwayne Mullin sent Secretary Weber a letter alleging that there may be "as many as 190,832" noncitizens registered to vote in California. ECF 1-1 at 2.[2] Secretary Weber responded on July 23, requesting "[a] detailed description of the methodology utilized by DHS to identify these allegedly ineligible voters," including the "data sources, software, and matching criteria utilized in this analysis." ECF 1-2 at 2.

DOJ's only apparent response came on October 13—just three weeks before the November 3 general election, after California had already begun mailing ballots

---

[1] Jasper Ward, *Trump Threatens California Officials with Imprisonment over Stance on Mail Ballots*, Reuters (Oct. 16, 2026), https://perma.cc/KVY7-5WCT.

[2] All ECF references are to the district court docket.

to registered voters—in the form of a 48-hour ultimatum. *See* Compl. ¶ 47, ECF 1; ECF 1-3. DOJ sent Los Angeles County a list of registered voters whom DOJ "believes are likely noncitizens." ECF 1-3 at 2. DOJ demanded that officials (1) refuse to send ballots to anyone on the list until their citizenship is confirmed; (2) "segregate[]" any ballots those voters return; and (3) not tabulate ballots already returned "until citizenship can be determined." *Id.* at 3. If California did not comply, DOJ threatened to "seek emergency relief." *Id.* DOJ did not answer any of Secretary Weber's questions regarding the methodology or sources of data used to create the list.

Everything known about how the federal government has been recently generating lists of purported "noncitizens" indicates that DOJ's list likely sweeps in eligible voters. Just days before this suit, a federal court found that DOJ has "failed to consider the risk that its use of citizenship records known to be unreliable would lead [it] to demand that states remove U.S. citizens from their voter rolls." *Common Cause v. U.S. Dep't of Just.*, No. 1:26-cv-1352, 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026). Earlier this year, DHS told Nevada that federal records showed the State may have nearly 16,000 noncitizens on its rolls—but when pressed, DHS cut the number to 185.[3] Even then, Nevada election officials informed DHS that

[3] Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sep. 24, 2026),

Nevada's records indicated that the 185 individuals were in fact citizens.[4] Similar examples abound. For instance, a manual audit conducted by Utah found that, of 8,917 individuals flagged as "potential noncitizens" by the federal government, nearly all were citizens.[5]

DOJ's data in California is almost certainly similarly inaccurate. Secretary Mullin's initial letter to Secretary Weber indicated that there could be "as many as 190,832 non-citizens" registered to vote, *see* ECF 1-1; that number has since plummeted to 20,000. *See* Compl. ¶ 47. Initial analysis by the Los Angeles County Clerk confirms DOJ's list is riddled with errors: 25.8% of voters in a sample analyzed by the Clerk listed their birthplace as the United States, 42.9% already had their registrations canceled, and another 4.6% had registrations listed as inactive. *See* ECF 32-1 at 17.

Finally, a federal whistleblower has described deeply troubling processes that likely produced DOJ's list. According to a September disclosure, officers working for DHS's "Unlawful Voter Initiative" were given less than two hours of training, quotas of reviewing records for 40 voters a day (about 12 minutes each), and

---

https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

[4] *See id*.

[5] Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Lab (Oct. 1, 2026), https://perma.cc/9JEX-B44C.

unreliable data that likely included naturalized citizens; officials described the data as compiled with "supplemental magic."[6] The disclosure also reports that officers were directed to unlawfully search California's voter lookup system—the use of which is strictly limited to voters themselves or persons the voter has specifically authorized may access that information—using personal information apparently obtained about the voters from federal government databases.[7]

## II. DOJ sued and then rushed to appeal before a hearing below.

DOJ filed suit eight days ago, on Thursday, October 15, seeking extraordinary relief: an injunction preventing California from sending mail ballots to or tabulating mail ballots from registered voters on DOJ's list of suspected noncitizens. Compl. ¶ 63. The same day, Proposed Intervenors SIREN and MFA filed a motion to intervene in order to protect the rights of their members and constituents and to safeguard their mission-critical voting rights work. ECF 11.

DOJ subsequently filed an *Ex Parte* Application for a Temporary Restraining Order ("TRO Application") and a motion to exceed the word limits on October 19. ECF 22-2, ECF 22. Proposed Intervenors promptly filed a proposed brief in opposition. ECF 58-1.

---

[6] *See* Letter from Anonymous Whistleblower to Alex Padilla, U.S. Senator at 30, 39–40 (Sep. 8, 2026), https://perma.cc/P9DF-8FSZ.

[7] *Id.* at 21–22.

The TRO Application requested relief from the district court "**by November 3**." ECF No. 22-2 at 4 (emphasis in original). The case was assigned to Judge Carter on October 21 at approximately 11:50 a.m. PDT. ECF 46. Judge Carter began acting on motions related to DOJ's TRO Application just hours later—at 3:59 p.m., Judge Carter granted DOJ's motion to expand its word limit and file its TRO Application on the docket. ECF 53. At 6:14 p.m., DOJ re-filed its TRO Application, which still **requested relief by November 3**. ECF 62-1 at 4.

At 6:40 p.m., Judge Carter scheduled a hearing on DOJ's TRO Application and on the pending motions to intervene for October 27. ECF 64. Two hours later, at 8:57 p.m., DOJ filed a "request for expedited ruling" on its TRO Application, demanding that the district court issue a ruling by noon the following day—a mere 15 hours later. ECF 67 at 2. The grounds for DOJ's emergency "request" was a fact known to DOJ since the filing of its complaint: the L.A. County Clerk has been processing mail ballots since October 5, 2026. ECF 22-7 at 4. Yet on October 22 at 3:01 p.m., when DOJ filed an opposition to the existing Defendants' request that the court expedite consideration of motions to dismiss, DOJ appeared to change its position yet again, indicating it understood the court would decide DOJ's request for relief at the October 27 hearing. ECF 72 at 1 (arguing there would be no "exigent circumstances" to justify expediting motions to dismiss "[s]hould this Court decline to issue a [TRO] or preliminary injunction following the October 27 hearing").

Inexplicably, just ninety minutes later, DOJ filed its notice of appeal at 4:30 p.m. on October 22, claiming "constructive denial" of its TRO Application. ECF 74.

## III. DOJ's demands imperil Proposed Intervenors' interests.

Proposed Intervenors are dedicated to protecting the rights of California voters, many of whom are naturalized citizens most likely to be wrongly flagged by federal citizenship data. *See* Ex. A, Decl. of Huy Tran ("Tran Decl.") ¶¶ 4–6, ECF 11-1; Ex. B, Decl. of Angelica Razo ("Razo Decl.") ¶¶ 5–6, 9, ECF 11-2. Both organizations work to register, educate, and turn out voters in communities historically excluded from the political process. Tran Decl. ¶¶ 4–5, 7; Razo Decl. ¶¶ 3–5. And both are in the middle of their get-out-the-vote programs for an election in which ballots have already been sent out to voters. *See* Cal. Elec. Code § 3000.5(a).

If DOJ obtains the relief it seeks, Proposed Intervenors' members and constituents who are eligible citizens could have their ballots withheld, set aside, or left uncounted, with no established path to clear their name in time to vote and have that vote count. Proposed Intervenors cannot ignore that kind of last-minute disruption. They would have to pull staff and volunteers from planned get-out-the-vote work to identify affected constituents, help them prove their citizenship, and make sure their ballots are counted. Tran Decl. ¶ 11; Razo Decl. ¶ 13.

***SIREN.*** SIREN is an advocacy and direct-services organization that empowers immigrants and refugees through community education, organizing,

policy advocacy, civic engagement, and legal services. Tran Decl. ¶¶ 3–4. It has roughly 120 members throughout California, and it serves a broader constituency including immigrants and naturalized citizens. *Id.* ¶ 4. A core part of SIREN's work is helping recently naturalized citizens register and vote. *Id.* ¶¶ 6, 14. Many already fear registering to vote will invite government scrutiny, and enforcement of a federal list of "likely noncitizens" whose ballots must be investigated and set aside would confirm those fears, undermining SIREN's mission. Tran Decl. ¶¶ 9, 14.

***Mi Familia en Acción.*** MFA is a national nonprofit civic engagement organization that works to build Latino political power by expanding the electorate through citizenship assistance, voter registration, voter education, and get-out-the-vote programs. Razo Decl. ¶¶ 3–4. In the next few weeks before Election Day, MFA intends to engage with approximately 50,000 voters in California. Razo Decl. ¶ 7. As with SIREN, many of the individuals MFA serves are naturalized citizens, who are the voters most likely to appear on a list generated from outdated federal records. *Id.* ¶¶ 5–6. If DOJ's demand succeeds, MFA would have to divert staff and volunteers from voter turnout work in the final weeks of the election to help those voters confirm their status and ensure their ballots are counted. *Id.* ¶¶ 10–11, 13. And DOJ's misguided and highly error-prone quest to identify purported noncitizen voters deters eligible citizens that MFA seeks to bring into the electorate. *Id.* ¶ 12.

## LEGAL STANDARD

Because there is no rule for "deciding whether intervention on appeal should be allowed," appellate courts draw from the district courts' analysis of Federal Rule of Civil Procedure 24 to assess such motions. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 276–77 (2022). Rule 24(a)(2) provides: "On timely motion, the court must permit anyone to intervene who ... claims an interest relating" to the action, and "is so situated that disposing of" it may as a practical matter "impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(b) prescribes intervention by discretion.

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as of right.

#### A. This motion is timely.

Proposed Intervenors' motion is timely. To make this determination, courts consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022). These factors are plainly satisfied: Proposed Intervenors' motions below and here were each filed less than 24 hours after DOJ's initial filings. *See Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (holding timely motion filed before "substantive proceedings").

### B. Proposed Intervenors' interests are threatened by this action.

Proposed Intervenors also have several "significantly protectable interest[s]" at stake in this suit, all of which are at risk of being "impair[ed] or impede[d]" by the "disposition of the action." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Proposed Intervenors both have a strong interest in ensuring that the constituencies they serve can exercise their right to vote. And both have a distinct interest in preserving their own voter engagement efforts, which will be hampered by DOJ's attempts to prevent lawfully registered voters—and naturalized citizens in particular—from receiving and voting mail ballots. The risk DOJ's action poses to any of these interests supports intervention as of right. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (emphasizing these elements are satisfied where an intervenor is "substantially affected in a practical sense by the determination made in an action").

#### 1. The requested relief threatens Proposed Intervenors' voter engagement efforts and deters the voters they serve.

Proposed Intervenors have an interest in ensuring that their members and constituents can participate in the upcoming election, free of unfounded threats or unlawful restrictions. Promoting voter turnout and civic engagement is at the core of their organizational missions. *See* Tran Decl. ¶ 5; Razo Decl. ¶ 3. DOJ's attempt to force California to deny these voters access to mail ballots—or impose supplemental

barriers to their participation in the voting process—based on erroneous data is antithetical to those interests.

Courts routinely grant intervention as of right to civic organizations like Proposed Intervenors that seek to protect their members and constituencies from potential disenfranchisement or unlawful interference with their right to vote, recognizing that they have "significant protectable organizational and associational interests in protecting their own constituents' voting rights." *1789 Found. Inc. v. Fontes*, No. 24-CV-02987, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025); *see also Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-CV-01867, 2024 WL 3454706, at *6 (N.D. Ill. July 18, 2024) (similar); *Bellitto v. Snipes*, No. 16-CV-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (similar).

In *Judicial Watch*, for example, the court found that organizations representing voters had "an associational interest in protecting their members from unlawful removal from the voter rolls should Plaintiffs succeed in obtaining their requested relief." 2024 WL 3454706, at *3. Likewise, in *Bellitto*, the court found that an organization representing healthcare workers and retirees in Florida had a protectable interest in avoiding "the court ordered 'voter list maintenance' sought by Plaintiffs." 2016 WL 5118568, at *1–2. Here, DOJ seeks an order requiring California to refuse to send ballots to or tabulate ballots cast by lawfully registered voters—but the threat to Proposed Intervenors' members and constituents is the

same as if DOJ sought to remove them from the rolls: either way, eligible voters would be denied the ability to cast a vote that counts.

In fact, harm to this particular interest—preserving the voting rights of members and constituents—has often been found to satisfy Article III's more onerous standing requirements. *E.g.*, *Mi Familia Vota*, 719 F. Supp. 3d at 983–88 (finding organizations had standing to protect members' voting rights); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1041–42 (D. Idaho 2023) (similar), *appeal argued*, 24-6376 (9th Cir. Sep. 19, 2025). That this interest meets the "more stringent" requirement of Article III "compels the conclusion that [Proposed Intervenors] have an adequate interest" for purposes of Rule 24. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

Proposed Intervenors also have an acute interest in this action because the relief DOJ seeks would deter the voters that Proposed Intervenors serve from participating in the political process. Naturalized citizens in particular already vote at much lower rates than other voters and are likely to be deterred from voting if DOJ prevails—either because they are concerned that exercising their constitutional right to vote will subject them and their families to false accusations and inappropriate scrutiny (at a time when such scrutiny can lead to doxxing, harassment or worse), or because they believe their votes may not count and so conclude voting is not worth it. Tran Decl. ¶ 15; Razo Decl. ¶ 12. This directly threatens Proposed

Intervenors' mission-critical work of encouraging naturalized citizens and others to register to vote and then vote. Tran Decl. ¶¶ 11–12, 16; Razo Decl. ¶¶ 5–6. This, too, supports intervention. *See United States v. Oregon*, No. 6:25-cv-1666, 2025 WL 3496571, at *1 (D. Or. Dec. 5, 2025) (finding protectable interest that supports intervention when organization alleged DOJ's requested relief would "deter qualified voters in marginalized communities from registering to vote in Oregon and engaging in the political process more broadly").

### 2. The requested relief would make it more difficult for Proposed Intervenors to carry out their missions.

Both Proposed Intervenors expend significant organizational resources to promote voter registration and voting among their members and communities. Razo Decl. ¶¶ 3–7; Tran Decl. ¶¶ 5–6. SIREN, for example, trains its members and other volunteers to support its GOTV efforts through direct canvassing. Tran Decl. ¶ 6. MFA similarly mobilizes voters through direct outreach and intends to engage with approximately 50,000 voters in California in the lead-up to the November election. Razo Decl. ¶ 7. The relief DOJ seeks would undercut these efforts, requiring Proposed Intervenors to divert time and resources towards staunching harm to these core activities, including with new and revised programs to aid voters who are swept into DOJ's unlawful eleventh-hour demand, and provide support to new voters, including naturalized citizens, who are deterred by DOJ's continuous threats and accusations of unlawful voting. *See* Tran Decl. ¶ 15; Razo Decl. ¶ 12.

Courts have recognized that such threats to core organizational efforts constitute an impairment of a protectable interest under Rule 24. For example, the Fifth Circuit recognized impairment of a significant protectable interest where litigation "may change what" an organization "must do to prepare for upcoming elections." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022) (reversing denial of intervention in election-related lawsuit). As there, Proposed Intervenors here "will have to expend resources to educate their members on the shifting situation in the lead-up" to future elections if this suit is successful. *Id.* And this Court's case law confirms that Rule 24 facilitates intervention precisely to avoid such "practical … impair[ments]." *Berg*, 268 F.3d at 818–22; *see also 1789 Found.*, 2025 WL 834919, at *3–4 (granting intervention in part because of organizations' interest in "preserving their financial resources"); *Jud. Watch*, 2024 WL 3454706, at *3 (finding labor unions had "organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members"); *Issa*, 2020 WL 3074351, at *3 (finding significant protectable interest in organizations "diverting their limited resources to educate their members on the election procedures"). This would satisfy even the more stringent requirement of Article III standing, and thus necessarily supports finding a protectable interest in support of a Rule 24 motion. *See Mi Familia Vota*, 719 F. Supp. 3d at 985.

### C. The existing parties do not adequately represent Proposed Intervenors' interests.

Proposed Intervenors cannot be assured their interests will be represented absent intervention. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests '*may be*' inadequate," and therefore "the burden of making this showing is minimal." *W. Expl. LLC v. U.S. Dep't of Interior*, No. 3:15-CV-491, 2016 WL 355122, at *3 (D. Nev. Jan. 28, 2016) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)) (emphasis added); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (describing this burden as "minimal"). Accordingly, courts are "liberal in finding" this requirement to be met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed.). And "intervention of right does not require an absolute certainty … that existing parties will not adequately represent [an intervenor's] interests." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Proposed Intervenors readily surpass this low hurdle.

DOJ, of course, does not adequately represent Proposed Intervenors' interests—its push to upend California elections and disenfranchise voters poses the threat that Proposed Intervenors seek to defend against. Nor can the government Defendants adequately represent Proposed Intervenors' interests. As public officials,

their decisions are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). Recognizing the competing interests faced by public officials, courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)—even when they seek the same ultimate outcome in litigation. *See GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quoting *Arakaki*, 324 F.3d at 1087)); *Barke v. Banks*, No. 8:20-cv-358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

The Supreme Court recently emphasized this exact point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). The Court thus instructed courts not to conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation

omitted). Nor may interests be deemed "identical" merely because they are "related." *Id.* (quoting *Trbovich*, 404 U.S. at 538–39). Rather, "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Id.* at 197 (quoting 7C *Wright & Miller's Federal Practice & Procedure* § 1909).

Here, the interests of the government Defendants and Proposed Intervenors diverge widely; they are plainly not "identical." *Id.* Unlike Proposed Intervenors, the government Defendants are charged with "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). These competing goals "naturally create some tension." *Id.* In contrast, as other courts have recognized, organizations like Proposed Intervenors have "[t]he mission and interest" to pursue only one of these interests, *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 801 (E.D. Mich. 2020)—that is, to eliminate "barriers to registration and voting," *Bellitto*, 935 F.3d at 1198; *see also Oregon*, 2025 WL 3496571, at *2 (finding election officials "do not share" proposed intervenors' interest in "increasing voter participation by marginalized communities"). As a result of these diverging interests, the government Defendants' representation of Proposed Intervenors cannot be presumed to be adequate.

What's more, the government Defendants are "elected officials, and like all

elected officials they have an interest in remaining politically popular and effective leaders," even if it means "compromising the proposed interveners'" interests. *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999) (citation modified). That concern is particularly strong here because DOJ has threatened California election officials with criminal prosecution if they do not meet the administration's demands—considerations which "may incentivize them to make compromises that Proposed Intervenors would not make." *Oregon*, 2025 WL 3496571, at *2; *see also United States v. Benson*, No. 1:25-CV-1148, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025) (finding election officials' incentive to "comply with federal law" and "preserve comity with the federal government" demonstrates they do not adequately represent private intervenors). Proposed Intervenors, by contrast, will defend their interests with zeal, undeterred by the federal government's threats.

## II. The Court should alternatively grant permissive intervention.

In the alternative, the Court should grant permissive intervention. Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b)(1), (3). Proposed Intervenors have also moved promptly, both below and now on appeal, and agree to abide by any schedule set by the Court.

Courts regularly grant permissive intervention to civic organizations to ensure

that a pro-voter perspective is offered—rather than only the views of a plaintiff who seeks to deny voters access to mail ballots, and government officials who are tasked with neutrally administering voting laws. *E.g.*, *Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-518, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024) (granting permissive intervention in NVRA case); *Winfrey*, 463 F. Supp. 3d at 799 (same).

This Court has also identified additional factors to consider in weighing permissive intervention requests, including intervenors' contribution to the factual and legal issues. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations buttress the case for intervention here. Proposed Intervenors' involvement will center the rights of voters who are most likely to be impacted by DOJ's attempt to interfere with California's voting procedures. Proposed Intervenors have also recently litigated related issues before this Court and have a valuable perspective to offer on the merits. *Weber*, No. 26-1232 (9th Cir. argued May 19, 2026); *Mi Familia Vota*, 129 F.4th 691; *see also* ECF No. 58-1 (Proposed Intervenors' proposed opposition to DOJ's request for a TRO).

## CONCLUSION

Proposed Intervenors respectfully request that this Court grant intervention.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Branden D. Lewiston
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
F: (202) 968-4498
unkwonta@elias.law
blewiston@elias.law

Tyler L. Bishop
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (202) 948-1135
tbishop@elias.law

*Counsel for Proposed Intervenor-Appellees SIREN and MFA*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the page limit requirement of Circuit Rule 27-1(1)(d).

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta