# Exhibit A

No. 26-7070

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

SHIRLEY WEBER, *et al.*,

*Defendants-Appellees*

On Appeal from the United States District Court for the Central District of California
No. 2:26-cv-12025-DOC
Hon. David O. Carter

# SIREN AND MI FAMILIA EN ACCIÓN'S PROPOSED RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL


Tyler L. Bishop
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Ste. 2100
Seattle, WA 98101
Tel.: (202) 948-1135

Uzoma N. Nkwonta
Branden D. Lewiston
Robert Golan-Vilella
Julianna D. Astarita
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 948-1135
unkwonta@elias.law

*Attorneys for Proposed Intervenors-Appellees SIREN and MFA*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .................... iii

INTRODUCTION .................... 1

BACKGROUND .................... 2

I. The federal government seeks to upend California's election based on a list derived from error-prone database matching. .................... 2

II. DOJ sued and then rushed to appeal before the scheduled hearing and before DOJ's own stated deadline. .................... 5

LEGAL STANDARD .................... 6

ARGUMENT .................... 7

I. This appeal is premature and improper. .................... 7

II. DOJ has not shown a likelihood of success .................... 9

A. DOJ has no cause of action in equity to enforce 18 U.S.C. § 611, a criminal statute. .................... 9

B. Federal law does not preempt California's procedures for mailing ballots to or tabulating ballots from registered voters. 13

C. The NVRA and other federal statutes bar DOJ's requested relief. .................... 17

III. The remaining factors weigh strongly against granting an injunction pending appeal. .................... 21

A. DOJ has not shown any harm, much less irreparable harm, in the absence of relief. .................... 21

B. Voters will suffer irreparable harm under DOJ's relief, and the public interest weighs against it. .................... 23

C. DOJ's delay—and *Purcell*—weighs strongly against relief. ...... 24

CONCLUSION .................... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) .......... 8, 9

*All. for the Wild Rockies v. Pena*,
865 F.3d 1211 (9th Cir. 2017) .......... 21

*Allen v. Milligan*,
608 U.S. 511 (2026) .......... 2, 24

*Amazon.com Servs. LLC v. NLRB*,
151 F.4th 221 (5th Cir. 2025) .......... 7, 8

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 15, 18, 19

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......... 11, 13

*Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*,
56 F.3d 791 (7th Cir. 1995) .......... 18

*Assurance Wireless USA, L.P. v. Reynolds*,
100 F.4th 1024 (9th Cir. 2024) .......... 14

*Common Cause v. U.S. DOJ*,
No. 1:26-cv-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026) .......... 3

*Doe v. San Diego Unified Sch. Dist.*,
19 F.4th 1173 (9th Cir. 2021) .......... 6

*Foster v. Love*,
522 U.S. 67 (1997) .......... 1

*Frazier v. Callicutt*,
383 F. Supp. 15 (N.D. Miss. 1974) .......... 21

*In re Fort Worth Chamber of Com.*,
100 F.4th 528 (5th Cir. 2024) .......... 7

*INS v. Pangilinan*,
486 U.S. 875 (1988) .................................................................. 17

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ..................................................... 23

*Louisiana v. United States*,
380 U.S. 145 (1965) .................................................................. 21

*Meeks v. Blazin Wings, Inc.*,
821 F. App'x 771 (9th Cir. 2020) .................................................. 7

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ..................................................... 23

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ................................................................ 24

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025)............................................. 16, 18–21

*Norwood v. Harrison*,
413 U.S. 455 (1973).................................................................... 12

*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sep. 25, 2026) ................ 2, 24, 25

*Price v. Diab*,
181 F.4th 955 (9th Cir. 2026)...................................................... 25

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ...................................................................... 24

*RNC v. Mi Familia Vota*,
145 S. Ct. 108 (Aug. 22, 2024) .................................................. 16

*RNC v. Mi Familia Vota*,
146 S. Ct. 2799 (June 29, 2026)................................................... 16

*Shivelhood v. Davis*,
336 F. Supp. 1111 (D. Vt. 1971) ................................................. 21

*United States v. California*,
824 F. Supp. 3d 1079 (C.D. Cal. 2026)......................................... 22

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ..... 15

*United States v. City of Philadelphia*,
644 F.2d 187 (3d Cir. 1980) ..... 10

*United States v. Cox*,
No. 0:25-cr-60249, 2026 WL 2948729 (S.D. Fla. Oct. 1, 2026) ..... 16, 17

*United States v. Jalas*,
409 F.2d 358 (7th Cir. 1969) ..... 10

*United States v. Mattson*,
600 F.2d 1295 (9th Cir. 1979) ..... 10, 22

*United States v. Metcalf*,
156 F.4th 871 (9th Cir. 2025) ..... 17

*United States v. Solomon*,
563 F.2d 1121 (4th Cir. 1977) ..... 10

*Watson v. RNC*,
609 U.S. 672 (2026) ..... 14, 16

*Yong v. INS*,
208 F.3d 1116 (9th Cir. 2000) ..... 16

**Statutes**

18 U.S.C. § 611 ..... 11, 14

34 U.S.C. § 12601 ..... 12

42 U.S.C. § 1997a ..... 12

52 U.S.C. § 10101 ..... 11, 21

52 U.S.C. § 10307 ..... 19

52 U.S.C. § 20505 ..... 17

52 U.S.C. § 20507 ..... 18

52 U.S.C. § 20508 .................................................................... 15

52 U.S.C. § 20510 .................................................................... 11

52 U.S.C. § 21083 .................................................................... 15

52 U.S.C. § 21111 .................................................................... 11

Cal. Elec. Code § 2101 .................................................................... 14

Cal. Elec. Code § 2200 .................................................................... 20

Cal. Elec. Code § 2201 .................................................................... 20

Cal. Elec. Code § 18560 .................................................................... 14

**Other Authorities**

Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Lab (Oct. 1, 2026), https://perma.cc/YCB4-5XR9 .................................. 4

Katherine Schaeffer, *One in Ten Eligible Voters in the United States Are Naturalized Citizens*, Pew Rsch. Ctr. (Sep. 19, 2019), https://perma.cc/2G59-7XB7 .................................................. 23

Letter from Anonymous Whistleblower to Alex Padilla, U.S. Senator (Sep. 8, 2026), https://perma.cc/J3D3-GLDF .............................................. 5

Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sep. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html ............................................ 3, 4

## INTRODUCTION

The U.S. Department of Justice's motion presents an entirely fictitious emergency, in an appeal DOJ has no right to pursue, in a dangerous and meritless action that should never have been brought.

To start, there is no final, appealable order. DOJ's request for a temporary restraining order below—which demands an injunction requiring California to segregate and not count ballots from over 20,000 registered voters who have never been shown to be ineligible to vote—remains pending. Far from "constructively den[ying]" that motion, Mot. 7, the district court promptly scheduled a hearing on the TRO for October 27, which is *one week before* the date by which DOJ originally requested relief. Thus, there is no appellate jurisdiction.

Second, no federal law authorizes DOJ's power grab. The Constitution "invests the States with responsibility for the mechanics of congressional elections," subject only to Congress's power to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). Congress has not exercised any such power here. The only statute DOJ invokes to support its claim—18 U.S.C. § 611—is a *criminal* statute that regulates the conduct of private persons. Section 611 cannot support DOJ's extraordinary demand, nor does it give DOJ any right of action to issue eleventh-hour diktats usurping States'

election authority. In fact, a long list of federal statutes expressly bar the relief DOJ seeks.

Third, DOJ's demand comes far too late. Federal courts have repeatedly cautioned against "alter[ing] the election rules on the eve of an election." *Allen v. Milligan*, 608 U.S. 511, 514 (2026) (citation modified). That is particularly true here because "[t]he election is not merely upcoming; it has already started." *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sep. 25, 2026).

DOJ's motion for an injunction pending appeal should be denied.

## BACKGROUND

### I. The federal government seeks to upend California's election based on a list derived from error-prone database matching.

On July 16, 2026, Secretary of Homeland Security Markwayne Mullin sent California Secretary of State Shirley Weber a letter alleging that there may be "as many as 190,832" noncitizens registered to vote in California. ECF 1-1 at 2 (emphasis removed).[1] Secretary Weber responded on July 23, requesting "[a] detailed description of the methodology utilized by DHS." ECF 1-2 at 2. DOJ offered no response for months. Then, on October 13, just three weeks before the November 3 election, and after California had already

[1] All ECF references are to the district court docket.

begun mailing ballots to voters, DOJ issued a 48-hour ultimatum. *See* Compl. ¶ 47, ECF 1; ECF 1-3. DOJ sent Los Angeles County a list of registered voters whom DOJ alleged are "likely noncitizens," ECF 1-3 at 2, and demanded that officials (1) refuse to send ballots to anyone on the list until their citizenship is confirmed; (2) "segregate[]" any ballots those voters return; and (3) not tabulate ballots already returned "until citizenship can be determined." ECF 1-3 at 2–3.

Everything known about how the federal government has been recently generating lists of purported "noncitizens" indicates that DOJ's list sweeps in eligible voters. Just days before this suit, a federal court found that DOJ has "failed to consider the risk that its use of citizenship records known to be unreliable would lead [it] to demand that states remove U.S. citizens from their voter rolls." *Common Cause v. U.S. DOJ*, No. 1:26-cv-1352, 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026). Earlier this year, DHS told Nevada that federal records showed the State may have nearly 16,000 noncitizens on its rolls; but when pressed, DHS cut the number to 185.[2] Even that pared-down figure quickly unraveled as Nevada election officials discovered that all 185

[2] Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sep. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

individuals were in fact citizens.[3] Similarly, an audit conducted by Utah found that, of 8,917 individuals flagged as "potential noncitizens" by the federal government, nearly all were citizens.[4]

DOJ's California list is almost certainly similarly inaccurate. Secretary Mullin's initial letter to Secretary Weber indicated that there could be "as many as 190,832 non-citizens" registered to vote, *see* ECF 1-1 at 2; that number has since plummeted to 20,000. *See* Compl. ¶ 47. Initial analysis by the County Clerk confirms DOJ's list is riddled with errors: 25.8% of voters in a sample analyzed by the Clerk listed their birthplace as the United States, 42.9% already had their registrations canceled, and another 4.6% had registrations listed as inactive. *See* ECF 32-1 at 17.

Finally, a federal whistleblower has described the troubling processes that likely produced DOJ's list. Officers working for DHS's "Unlawful Voter Initiative" were given less than two hours of training, quotas of reviewing records for 40 voters a day (about 12 minutes each), and unreliable data that likely included naturalized citizens; officials described the data as compiled

---

[3] *See id.*

[4] Jack Friedman & Wren Orey, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, MIT Election Lab (Oct. 1, 2026), https://perma.cc/YCB4-5XR9.

with "supplemental magic."[5] The disclosure also reports that officers were directed to unlawfully search California's voter lookup system using personal voter information apparently obtained from government databases.[6]

## II. DOJ sued and then rushed to appeal before the scheduled hearing and before DOJ's own stated deadline.

DOJ filed suit on October 15, seeking an injunction preventing California from sending ballots to or tabulating mail ballots from registered voters on DOJ's list of suspected noncitizens. Compl. ¶ 63. On October 19, DOJ filed an Ex Parte Application for a Temporary Restraining Order ("TRO Application"), which it attached to a motion to exceed the word limits. ECF 22-2, ECF 22.

The TRO Application emphasized in bold that it requested relief from the district court "**by November 3**." ECF 22-2 at 4. The case was assigned to Judge Carter on October 21 at approximately 11:50 a.m. PDT. ECF 46. Judge Carter began acting on motions just hours later: at 3:59 p.m., Judge Carter granted DOJ's motion to expand its word limit and file its TRO Application on the docket, ECF 53; at 6:14 p.m., DOJ re-filed its TRO Application, again requesting relief **by November 3**, ECF 62-1 at 4.

---

[5] *See* Letter from Anonymous Whistleblower to Alex Padilla, U.S. Senator at 30, 39–40 (Sep. 8, 2026), https://perma.cc/J3D3-GLDF.

[6] *Id.* at 22–23.

At 6:40 p.m., Judge Carter scheduled a hearing on DOJ's TRO Application and two motions to intervene for October 27. ECF 64. *Two hours later*, at 8:57 p.m., DOJ filed a "request for expedited ruling," demanding that the district court rule by noon the following day—a mere 15 hours later. ECF 67 at 2. The grounds for DOJ's emergency "request" was a fact known to it since the filing of its complaint: the L.A. County Clerk has been processing mail ballots since October 5. ECF 22-7 at 4.

DOJ filed its notice of appeal the next day, claiming "constructive denial" of its TRO Application. ECF 74 at 1. It then moved for an injunction pending appeal below, ECF 76, and before this Court.

## LEGAL STANDARD

"To determine whether to grant an injunction pending appeal, this court applies the test for preliminary injunctions." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021). The plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## ARGUMENT

### I. This appeal is premature and improper.

A plaintiff "cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024). That is what DOJ does here, but worse: it attempts to manufacture jurisdiction from the fact that the district court has not ruled on its TRO, even though the court scheduled a hearing on that TRO for October 27, consistent with DOJ's own repeated assertions that it required relief by November 3. The court has committed to ruling "promptly" after the October 27 hearing. ECF 85 at 2. Because there is no appealable order, DOJ's appeal must be dismissed. *Meeks v. Blazin Wings, Inc.*, 821 F. App'x 771, 772 (9th Cir. 2020).

Only under very rare occasions will appellate jurisdiction arise based on "constructive" denial, and this is not one of them. To start, DOJ would have to show it "acted diligently." *Amazon.com Servs. LLC v. NLRB*, 151 F.4th 221, 228 (5th Cir. 2025). It has not. Even beyond repeatedly stating it wanted a decision by November 3—before shifting with no explanation after the district court scheduled a hearing well before then—DOJ delayed filing this suit for months. The federal government first contacted Secretary Weber alleging noncitizens were on California's rolls *in July*, ECF 1-1, but then went

silent for *three months*, never responding to the Secretary's questions about the *reliability* of the list, before filing suit on October 15 *after* voting was already underway.

DOJ also cannot show any "legitimate basis for the alleged urgency," as required for it to establish constructive denial. *Amazon.com Servs.*, 151 F.4th at 228. Its catastrophizing about noncitizen voting is contradicted by its own admissions that it does not know if the voters on the list are *actually* noncitizens. Compl. ¶ 4 (alleging it "believes" they likely are). Initial analysis indicates DOJ's list falsely identifies citizens as noncitizens. ECF 32-1 at 17. Nor does DOJ identify any evidence that the individuals on the list have actually cast ballots; the vast majority in the sample analyzed had, in fact, *never* voted. ECF 32-1 at 17. This "theoretical possibility" of harm does not suffice to establish constructive denial. *Amazon.com Servs.*, 151 F.4th at 228. And DOJ offers no authority for its assumption that the federal government suffers irreparable harm when a state counts ballots cast by registered votes who have never been shown to be ineligible.

DOJ relies on *A.A.R.P. v. Trump*, 605 U.S. 91 (2025) (per curiam), but that case only reveals why DOJ's TRO here was not constructively denied. The *A.A.R.P.* plaintiffs were detainees who were told that they would be deported "tonight or tomorrow" and sought an emergency TRO to block the

deportations. *Id.* at 92. After 14 hours of inaction from the court—during which some plaintiffs were "loaded on to buses, presumably headed to the airport"—the plaintiffs appealed and sought emergency relief before the Supreme Court. *Id.* at 93, 97. The Court held that the district court's "inaction in the face of extreme urgency" and "imminent threat of severe, irreparable harm" from deportation constituted constructive denial. *Id.* at 94. Here, in sharp contrast, DOJ waited months to sue and then repeatedly stated that it sought relief by November 3—before inexplicably reversing course and demanding unprecedented, immediate relief based on admittedly unsubstantiated evidence. This case is nothing like *A.A.R.P.*

Because the district court did not constructively deny DOJ's TRO, there is no final, appealable order. The appeal must therefore be dismissed.

## II. DOJ has not shown a likelihood of success.

Even if this Court were to consider the appeal, DOJ's motion should still be denied because DOJ failed to show any likelihood of success on the merits. DOJ's lawsuit and its unprecedented demands extend far beyond its constitutionally assigned role, and it seeks relief that would violate federal law several times over.

### A. DOJ has no cause of action in equity to enforce 18 U.S.C. § 611, a criminal statute.

DOJ cites no authority whatsoever for the proposition that it may

enforce the criminal prohibition in 18 U.S.C. § 611—which addresses the conduct of noncitizens—through a freestanding suit in equity against California's election officials. *See* Mot. 24.

Precedent decisively cuts the other way. *See United States v. Mattson*, 600 F.2d 1295, 1297–1300, 1297 n.1 (9th Cir. 1979) (holding DOJ lacked cause of action in equity to enjoin state officials to address unsanitary and unsafe facilities housing institutionalized citizens); *see also, e.g.*, *United States v. Solomon*, 563 F.2d 1121, 1124 (4th Cir. 1977) (similar); *United States v. City of Philadelphia*, 644 F.2d 187, 190–99 (3d Cir. 1980) (similar as to suit to enjoin city officials from violating civil rights through discriminatory policing, despite DOJ invoking criminal statutes barring deprivation of civil rights); *United States v. Jalas*, 409 F.2d 358, 360 (7th Cir. 1969) (similar as to DOJ's suit to enjoin official from running for union election under criminal statute). Indeed, there is a "general rule prohibiting issuance of an injunction against the commission of a crime." *Jalas*, 409 F.2d at 360.

These long-settled authorities foreclose DOJ's claim. Its sole cause of action alleges a violation of the Supremacy Clause, but even DOJ recognizes that "there is no implied right of action under the Supremacy Clause." ECF 22-2 at 17 (citation omitted); *see* Mot. 24. And the criminal statute DOJ relies

on here (§ 611) does not regulate the conduct of election officials at all. It makes it "unlawful for any alien to vote." 18 U.S.C. § 611(a).

Further, Congress specified how § 611 is enforced: through criminal prosecutions of individuals. 18 U.S.C. § 611(b). "[T]he 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). DOJ is using that tool for enforcement right now—it touts indictments of alleged noncitizen voters, emphasizing the President's directive to "address noncompliance with . . . 18 U.S.C. 611(a)." Mot. 31. (alteration in original) (quoting Exec. Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17127, 17127 (Mar. 31, 2026)). DOJ has failed to point to *anything* in § 611 suggesting that Congress meant to go beyond such procedures and also authorize a *civil* suit in equity against state officials.

Further still, where Congress intended for DOJ to have a cause of action to sue state officials concerning voter list maintenance, it said so explicitly. *See* 52 U.S.C. § 20510(a) (National Voter Registration Act); *see also id.* § 21111 (Help America Vote Act). Congress has also authorized DOJ to bring civil suits for injunctive relief in other contexts. *E.g.*, 52 U.S.C.

§ 10101(c), 34 U.S.C. § 12601(b), 42 U.S.C. § 1997a. It chose not to here. And DOJ has not identified a *single* court that has interpreted a federal criminal prohibition to invest the federal government with such broad power over the details of state administration of elections.

DOJ attempts to justify this power grab by pointing to *Norwood v. Harrison*, 413 U.S. 455 (1973), which it cites for the proposition that California "cannot 'induce, encourage, . . . promote', . . . [or] knowingly facilitate . . . noncitizen voting" in a federal election. Mot. 27. The case is inapposite and does not even apply on DOJ's own terms. DOJ never alleges that California "induce[d], encourage[d], or promote[d]" noncitizen voting, *Norwood*, 413 U.S. at 465; rather, it claims that the local officials did not immediately (within 48 hours) comply with DOJ's demands to stop sending mail ballots to—and segregate ballots received from—voters on a list of possible noncitizens compiled by the federal government. Mot. 18–20. And while DOJ suggests *Norwood* shows that California cannot "knowingly facilitate" noncitizen voting, Mot. 27, that phrase is DOJ's own creation; it appears nowhere in *Norwood*, which held that a Mississippi program to support racially segregated private schools violated the Fourteenth Amendment's equal-protection guarantee, just as it would if a state or locality ran a segregated school directly, 413 U.S. at 467.

DOJ effectively asks this Court to bypass Congress's judgment and transform § 611 from a criminal prohibition applicable to individual aliens into a mechanism for usurping state officials' ability to determine voter eligibility, making the ballots of over 20,000 voters presumptively invalid until their citizenship status can be "verif[ied]." Mot. 36. Federal law does not authorize such a demand, and granting such relief would require a federal court to supervise a slapdash citizenship-verification regime—precisely the kind of "judicially unadministrable" task Congress would not silently leave to courts of equity. *Armstrong*, 575 U.S. at 328.

### B. Federal law does not preempt California's procedures for mailing ballots to or tabulating ballots from registered voters.

DOJ claims federal law preempts California from mailing ballots to or tabulating mail ballots from individuals whom DOJ suspects "might be" noncitizens registered to vote, Compl. ¶ 59, but this theory is meritless. No federal law requires California to segregate and not count ballots from registered voters merely because of the federal government's unconfirmed—and, as is already evident here, broadly misplaced—suspicions.

While preemption comes in three flavors—express, field, and conflict—DOJ invokes only conflict preemption, Mot. 23–26, which arises when it is "impossible for a private party to comply with both state and federal law,"

*Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031–32 (9th Cir. 2024). DOJ fails to show any such conflict between federal and California law. California law, like federal law, bars noncitizens from voting in federal elections. Cal. Elec. Code §§ 2101(a), 18560(a); 18 U.S.C. § 611. That is fatal to DOJ's preemption claim, because "private part[ies]" can easily abide by "both state and federal law." *Assurance Wireless*, 100 F.4th at 1032 (quoting *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022)). If someone is a noncitizen, they cannot vote; if they are a citizen (and meet other requirements), they can.

Undeterred, DOJ claims that 18 U.S.C. § 611 preempts California laws requiring mail-in ballots to be sent to registered voters and requiring those ballots to be counted, at least insofar as those laws apply to voters on DOJ's list of suspected noncitizens. Mot. 29–30. DOJ's argument fundamentally misunderstands both § 611 and preemption doctrine. Section 611 is a *criminal* prohibition that makes it unlawful for an "alien" to vote; it says nothing about a *State's* obligations with respect to election administration. *See also supra* Argument § II.A. And since Congress's power to preempt state election laws extends "so far as it is exercised, and no farther," *Watson v. RNC*, 609 U.S. 672, 697 (2026) (citation omitted), that conspicuous silence means § 611 cannot preempt the California laws at issue here.

Nor can DOJ establish preemption by claiming California's failure to abide by its commands "frustrate[s]" federal enforcement. Mot. 30–32 (claiming obstacle preemption). This Court has already rejected that premise. *See United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019). As the Court put it, "refusing to help is not the same as impeding." *Id.* (citation omitted). Indeed, any contrary result would run "directly afoul of the Tenth Amendment and the anticommandeering rule." *Id.*

Other federal laws buttress the conclusion that § 611 does not preempt a state's voting laws just because DOJ believes a noncitizen may be registered. The Constitution "empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." *Arizona v. Inter Tribal Council of Ariz., Inc. ("ITCA")*, 570 U.S. 1, 16 (2013). Against that backdrop, the only affirmative requirement federal law imposes on states with respect to assessing voters' citizenship is to require them to attest under penalty of perjury that they are citizens when they register. 52 U.S.C. §§ 20508(b)(2), 21083(b)(4)(A)(i). DOJ does not contend that Defendants failed to comply with that requirement.

Not only does *no* federal law authorize DOJ to unilaterally impose this requirement on state officials, the National Voter Registration Act (NVRA) preempts it. *See ITCA*, 570 U.S. at 15 (holding NVRA preempts Arizona from

requiring documentary proof of citizenship on the federal registration form); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 710–11 (9th Cir. 2025) (holding NVRA preempts Arizona from requiring documentary proof of citizenship to vote by mail), *cert. granted sub nom. RNC v. Mi Familia Vota*, 146 S. Ct. 2799 (2026).[7] If DOJ believes that requiring additional proof of citizenship would be wise, the appropriate audience is Congress, not this Court. *See Watson*, 609 U.S. at 695.

Finally, the doctrine of constitutional avoidance supplies yet another reason to reject DOJ's theory. DOJ fails to even acknowledge that, earlier this month, a federal court declared § 611 unconstitutional. *United States v. Cox*, No. 0:25-cr-60249, 2026 WL 2948729 (S.D. Fla. Oct. 1, 2026). Surveying constitutional text and history, *Cox* concluded that "Congress may only 'regulate *how* federal elections are held, but not *who* may vote in them.'" *Id.* at *8 (quoting *ITCA*, 570 U.S. at 16). It therefore held § 611's prohibition on noncitizens voting in federal elections unconstitutionally intrudes into

[7] The Supreme Court stayed an aspect of *Mi Familia Vota* not at issue here. *See RNC v. Mi Familia Vota*, 145 S. Ct. 108 (Aug. 22, 2024). It later granted *certiorari* on that unrelated aspect of the decision, and on the 90-day provision issue, with argument scheduled in December. *See RNC v. Mi Familia Vota*, 146 S. Ct. 2799 (June 29, 2026). It has not granted *certiorari* on the other two portions of the decision discussed in this brief. All portions of *Mi Familia Vota* remain established precedent in this Court. *See Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000).

states' exclusive authority over voter qualifications. *Id.* at *11–12. That constitutional concern would be supercharged if, as DOJ contends, § 611 not only sets a voter qualification for federal elections but *also* authorizes DOJ to issue eleventh-hour diktats to segregate and not count ballots. *See, e.g.*, *United States v. Metcalf*, 156 F.4th 871, 882 (9th Cir. 2025) ("[C]ourts should construe ambiguous statutes to avoid the need even to address serious questions about their constitutionality." (citation omitted)).

### C. The NVRA and other federal statutes bar DOJ's requested relief.

DOJ's request should further be denied because federal statutes—including the NVRA, the Voting Rights Act, and the Civil Rights Act—foreclose the relief DOJ seeks. *See INS v. Pangilinan*, 486 U.S. 875, 883 (1988) (holding "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law" (alteration in original)).

**NVRA.** The relief DOJ demands would violate the NVRA several times over. *First*, DOJ's demand that voters on its list have their ballots set aside until their citizenship is "verif[ied]," Mot. 36, conflicts with the NVRA's requirement that states "accept and use the [federal form] for the registration of voters in elections for Federal office." 52 U.S.C. § 20505(a)(1). That means California must "accept the Federal Form as a complete and sufficient

registration application." *ITCA*, 570 U.S. at 9 (emphasis added). As this Court held last year, demanding supplemental evidence of citizenship in order to vote by mail would require mail voters "to provide more information than what the federal form requires." *Mi Familia Vota*, 129 F.4th at 710. Here, DOJ's demand that voters on its list confirm citizenship "to vote by mail" similarly "conflicts" with the NVRA and "cannot stand." *Id.*

*Second*, DOJ's demand conflicts with the NVRA's requirement that states "complete, not later than 90 days prior to [an election] for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). The November 3 election is days away. This Court has held that the 90-day provision applies to programs like this one that target suspected noncitizens using computerized matching processes. *See Mi Familia Vota*, 129 F.4th at 715–16. Any suggestion that this provision applies only to the voter registration process should be rejected; this Court has rebuffed similar attempts to skirt the NVRA's protections before. *See id.* at 711 (rejecting "narrow view" that NVRA governs only "voter registration—not rules for casting a ballot by mail" as "contrary to the text"). Registration is not an end—it exists so that people can cast a ballot that will be counted. *See Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 793

(7th Cir. 1995); *accord ITCA*, 570 U.S. at 13 (observing the NVRA would "ceas[e] to perform any meaningful function" if its provisions were circumventable).

*Third*, and finally, DOJ's demand violates the NVRA's requirement that state programs for voter-registration list maintenance be "uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1). *Mi Familia Vota* held that requiring voters who officials "have reason to believe are not citizens" to prove their citizenship would be "non-uniform" and "discriminatory in effect because it is likely that the properly registered citizens who would be required to respond and provide documentation would be naturalized citizens." 129 F.4th at 714 (citation modified). DOJ's own papers confirm that the new checks it demands focus on naturalized citizens and non-citizens, ECF 62-2 ¶¶ 16, 18, and thus that its relief is similarly likely to have a discriminatory impact, *see Mi Familia Vota*, 129 F.4th at 714. That violates the NVRA.

**Voting Rights Act.** DOJ's requested relief would also violate the Voting Rights Act, which provides that "no person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote . . . or willfully fail or refuse to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a). DOJ asks to enjoin state election officials from

"tabulating" ballots cast by voters on DOJ's list. Mot. 21. Those voters are presumptively qualified because they are registered to vote: State law provides that registration is "permanent for all purposes" "unless and until" the registration is canceled. Cal. Elec. Code § 2200. An official must have "proof" someone is ineligible to remove them, not mere allegations. *Id.* § 2201(a)(8). DOJ admits it has insufficient proof. Compl. ¶ 59. The Voting Rights Act, like the NVRA, would be a dead letter if its protections could be sidestepped whenever someone alleged that a voter might be ineligible.

**Civil Rights Act.** DOJ also seeks relief that runs afoul of the different standards, practices, or procedures provision ("DSPP Provision") of the Civil Rights Act. *See* 52 U.S.C. § 10101(a)(2)(A) (providing "no person acting under color of law shall" in "determining whether any individual is qualified under State law . . . apply any standard, practice, or procedure different from [those] applied under such law or laws to other individuals within the same" locality). In *Mi Familia Vota*, where the law at issue required county officials to conduct citizenship checks for voters they had "reason to believe" were not citizens, 129 F.4th at 723, this Court explained that the provision imposed different procedures on naturalized citizens compared to U.S.-born citizens, because the database "contains no information on U.S.-born citizens" and

thus "solely impacts naturalized citizens." *Id.* (citation modified).[8]

In this case, DOJ's request is an effort to "determin[e] whether [certain] individual[s] [are] qualified under State law or laws to vote in any election." 52 U.S.C. § 10101(a)(2)(A). And it requires applying a "standard, practice, or procedure" that is "different from the standards, practices, or procedures applied under such law . . . to other individuals within the same county, parish, or similar political subdivision." *Id.* It follows that DOJ's relief violates the Civil Rights Act, too. *See Mi Familia Vota*, 129 F.4th at 723.

## III. The remaining factors weigh strongly against granting an injunction pending appeal.

Even if DOJ could show a likelihood of success, its failure to establish any of the remaining factors also suffices to deny its motion. *See, e.g.*, *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1223 (9th Cir. 2017) ("[A] party seeking a preliminary injunction must satisfy all four factors.").

### A. DOJ has not shown any harm, much less irreparable harm, in the absence of relief.

DOJ has not shown that the United States would likely suffer

[8] Other courts, too, have held that the provision bars imposing special procedures for a subset of voters. *See, e.g.*, *Frazier v. Callicutt*, 383 F. Supp. 15, 18–19 (N.D. Miss. 1974); *Shivelhood v. Davis*, 336 F. Supp. 1111, 1115 (D. Vt. 1971); *see also Louisiana v. United States*, 380 U.S. 145, 154–55 (1965) (approving district court's order that a "uniform, objective, standardized 'citizenship test'" be applied "to all or to none" of the voters in a parish).

irreparable harm absent relief. It offers two theories—a *per se* injury from the supposed Supremacy Clause violation and impairment of its ability to enforce federal law. Mot. 33–34. Neither survives scrutiny.

*First*, DOJ cannot show an injury to its purported sovereign interests because it has not shown that Defendants are in violation of federal law. *See supra* Argument § II.B. Even if it had, the "mere *existence*" of an unlawful state act—without more—cannot harm the government's sovereign interests. *United States v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026); *accord Mattson*, 600 F.2d at 1300 (holding DOJ cannot "evad[e]" standing requirements "by an assertion of nonstatutory authority").

*Second*, the cases DOJ cites involve a sovereign barred from enforcing its own laws. Mot. 34 (citing *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018)). Here, of course, no one has barred *DOJ* from enforcing federal laws, yet DOJ proposes to bar *California* from following its own laws. DOJ's suggestion that its injunction would "preserve the rapidly eroding status quo" is equally backwards. Mot. 35. The status quo is that California election officials are processing ballots pursuant to state law; it is *DOJ* that seeks to radically alter the status quo by imposing new obligations to "segregate ballots" during an ongoing election. Mot. 36. This is patently improper.

### B. Voters will suffer irreparable harm under DOJ's relief, and the public interest weighs against it.

Conversely, if DOJ succeeds, registered voters are certain to have their ballots segregated and not counted, which will cause them irreparable harm. Every time the federal government has attempted to identify lists of noncitizens, the error rates have been eye-popping. *See supra* Background § I. That is particularly likely here because California has the highest rate of naturalized citizens as a percentage of the voting population in the country, 21%.[9]

DOJ's relief thus risks disenfranchising lawful voters, and any deprivation of the right to vote is "real and completely irreparable" because "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *accord Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (holding deprivation of constitutional right "constitutes irreparable injury"). The public interest factor weighs against DOJ for similar reasons. *See Melendres*, 695 F.3d at 1002.

---

[9] Katherine Schaeffer, *One in Ten Eligible Voters in the United States Are Naturalized Citizens*, Pew Rsch. Ctr. (Sep. 19, 2019), https://perma.cc/2G59-7XB7.

### C. DOJ's delay—and *Purcell*—weighs strongly against relief.

Finally, DOJ's inexplicable delay and the *Purcell* principle strongly counsel in favor of denying the motion. DOJ makes no effort to explain why it filed suit shortly before Election Day, with voting in California already underway. The Supreme Court has "repeatedly cautioned that lower federal courts should not alter the election rules on the eve of an election." *Allen*, 608 U.S. at 514 (citation modified); *see generally Purcell v. Gonzalez*, 549 U.S. 1 (2006).

DOJ asks this Court to do just that: it seeks to require California to interrupt its elections and set aside ballots cast by thousands of voters. Mot. 36. *Purcell* bars such late-breaking intervention. In fact, *Purcell* "applies with even greater force here," because "[t]he election is not merely upcoming; it has already started." *People Not Politicians*, 2026 WL 2883222, at *2. DOJ's request for emergency relief is particularly galling in view of its months-long delay in bringing this litigation. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (explaining *Purcell* cannot be overcome when party "delayed bringing the complaint to court").

DOJ's cursory attempt to address *Purcell* in a footnote only reveals how squarely the doctrine applies here. DOJ says it does not seek to enjoin "election rules on the eve of an election" and that instead it seeks "to force

California to *conform* to federal and state election rules." Mot. 30 n.2 (citation omitted). But that is the literal definition of injunctive relief: "[A]n injunction forces the defendant to conform its behavior to the law." *Price v. Diab*, 181 F.4th 955, 959 (9th Cir. 2026). And DOJ's requested relief is foreclosed by *Purcell*'s prohibition on "late-breaking" injunctions. *People Not Politicians*, 2026 WL 2883222, at *2. It invites mass confusion as voters scramble to figure out if they can vote by mail—or at all—and what they have to do to ensure their ballots count. Indeed, no voter can be sure that they have not been wrongly identified as ineligible. That is the exact type of "electoral chaos" *Purcell* guards against. *Id.*

## CONCLUSION

The Court should deny DOJ's emergency motion.

Dated: October 24, 2026

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Branden D. Lewiston
Robert Golan-Vilella
Julianna D. Astarita
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
F: (202) 968-4498
unkwonta@elias.law
blewiston@elias.law
rgolanvilella@elias.law
jastarita@elias.law

Tyler L. Bishop
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (202) 948-1135
tbishop@elias.law

*Counsel for Proposed Intervenors-Appellees SIREN and MFA*

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(d) and 32-3 because it contains 5,527 words.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta