No. 26-7070

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA**,
*Plaintiff-Appellant*,
v.

**STATE OF CALIFORNIA; SHIRLEY N. WEBER**, *in her official capacity as California Secretary of State*; **DEAN C. LOGAN**, *in his official capacity as the County of Los Angeles – Registrar-Recorder/County Clerk*,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of California
No. 2:26-cv-12025-DOC-ADS

# OPPOSITION TO DEAN C. LOGAN'S EMERGENCY MOTION TO DISMISS APPEAL FOR LACK OF APPELLATE JURISDICTION

TODD BLANCHE
*Attorney General*
R. TRENT MCCOTTER
*Acting Deputy Attorney General*
JOHN K. ADAMS
*Associate Deputy Attorney General*
ANDREW M. DARLINGTON
*Counsel to the Assistant Attorney General*
950 Pennsylvania Avenue, NW
Washington, D.C., 20530
Telephone: (202) 532-0100
Andrew.Darlington2@usdoj.gov

BILAL A. ESSAYLI
*First Assistant United States Attorney*
JULIE A. HAMILL
*Assistant United States Attorney*
J. ROBERT RENNER
*Assistant United States Attorney*
300 N. Los Angeles St., Ste. 7516
Los Angeles, California 90012
Telephone: (213) 894-2464
E-mail: Julie.Hamill@usdoj.gov

Attorneys for Plaintiff-Appellant
United States of America

## INTRODUCTION

The United States sued Defendants (collectively, California) to prevent irreversible dilution of American votes of United States citizens in the upcoming federal election. Despite the critical interests at stake, counties throughout the State continue to process tens of thousands of ballots as steadily as a metronome, willfully indifferent to the fact that upwards of 20,000 of those ballots may have been cast by noncitizens. Indeed, California is poised to count ballots from individuals charged with violating 18 U.S.C. § 611. And California has now confirmed that once a ballot is physically separated from its envelope, it becomes untraceable and the ability to identify the voter is forever lost. CR 32-1 at 11. This means each day that California processes vote-by-mail ballots, it becomes impossible for any court to prevent even more votes from noncitizens from canceling the votes of United States citizens.

The Federal Government sought emergency relief six days ago. During that time, the Federal Government has come to learn, the County of Los Angeles has processed roughly 219,000 ballots that can never again be traced to the person who cast them.[1] By failing to rule on that

[1] On October 20, California stated it had processed 331,000 ballots. CR 32-1 at 11. Four days later, that number reached 550,000. Logan Opp'n, Dkt. 32.1 at 2, fn*.

emergency motion, the district court has practically denied it. The Supreme Court has long held—and just last year reaffirmed—that a district court's failure to promptly act in the face of grave urgency and ongoing irreparable harm has the effect of refusing an injunction.

This Court thus has appellate jurisdiction, and the motion to dismiss must be denied. The Court should grant the Federal Government's motion for an injunction pending appeal, order an expedited appeal, and order the district court to cancel Tuesday's hearing because the district court lacks jurisdiction.

## RELEVANT PROCEDURAL HISTORY

The United States sued on October 15, 2026. CR 1. Four days later, on October 19, 2026, the United States filed an *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue, accompanied by an application to exceed the word limits. CR 22, 22-2. At that time, when it was unaware that California's processing rendered ballots untraceable once removed from their envelopes, the Federal Government sought relief by November 3, 2026. CR 22-2 at 15. The case was originally assigned to Judge Holcomb, who entered a standing order on October 20. CR 34 and 44. The next day,

the case was transferred to Judge Carter. CR 46.

California opposed the United States' application on October 20, 2026. CR 32-1. At that moment, the United States learned that the County has already processed more than 300,000 vote-by-mail ballots, and that once a vote-by-mail ballot is separated from its envelope as part of that processing, "there is no way to associate the voter with that ballot." CR 32-1 at 11. The United States immediately responded with exigency commensurate with the irreparable and extremely time-sensitive nature of the emergency illuminated in California's opposition and sought an expedited ruling on its *ex parte* application by 12:00 p.m. on October 22, 2026. CR 67.

In the meantime, on October 21, 2026, the district court set a hearing on the United States' application for October 27, 2026, *eight days* after the United States sought *emergency* relief. Although this timetable itself amounted to an effective denial of the Federal Government's emergency request, the United States nevertheless filed a request for an expedited ruling. CR 67. When the district court declined to act by the time requested, the Federal Government had no choice but to seek this Court's intervention. CR 74.

## ARGUMENT

**1.** As the Supreme Court has held, "[a]ppellate courts have jurisdiction to review interlocutory orders that have 'the practical effect of refusing an injunction.'" *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). And "[a] district court's inaction in the face of extreme urgency and a high risk of 'serious, perhaps irreparable,' consequences may have the effect of refusing an injunction." *Id.* (quoting 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3924.1 at 174, 180–181 (3d ed. 2012)).

Here, there is extreme urgency and a high risk of serious, irreparable consequences. Each day that passes, California processes more ballots and thus inflicts more harm that cannot be remedied. The district court's failure to act is thus allowing more irreparable harm as each day passes and prevents effective review. *Cf. Estrada v. Gomez*, 19 F.3d 26 (9th Cir. 1994) ("The stay could not effectively be reviewed on appeal from a final judgment because the injuries to Estrada may have already occurred."). The United States will be effectively foreclosed from

pursuing further review as ballots are being processed at a rate of tens of thousands per day, and the election itself is just nine days away.[2]

California wrongly claims (at 5-6) that the Federal Government's interest is limited to determining whether noncitizens voted. That makes little sense. Federal law prevents noncitizens from voting. *See* 18 U.S.C. § 611. The United States, in turn, has a significant interest in preventing votes cast by noncitizens from being counted. After all, "[e]very voter in a federal primary election . . . has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974). For reasons discussed in the contemporaneously filed reply brief in support of the motion for an injunction pending appeal, the Federal Government plainly has not only an interest here but standing to prevent unlawful voting.

At bottom, the emergency motion has been pending for six days, and irreparable harm grows each day. The district court's upcoming hearing—scheduled eight days after we filed our emergency motion—guarantees that California will continue causing irreparable harm as it

[2] On October 20, the County stated it had processed 331,000 ballots. CR 32-1 at 11. Four days later, that number reached 550,000. Logan Opp'n, Dkt. 32.1 at 2, fn*. This means over 200,000 more ballots have become untraceable in Los Angeles County alone since the United States sought emergency relief in this case.

continues to remove vote-by-mail ballots from envelopes, including ballots from individuals charged with violating 18 U.S.C. § 611. *See* Dkt. 5.1 (Mot.) at 9.

**2.** California takes issue with the fact that the United States' *ex parte* application sought a temporary restraining order rather than a preliminary injunction in the first instance. This argument fails.

As the Supreme Court confirmed last year, the constructive denial of a TRO can be appealable. *See A. A. R. P.*, 605 U.S. at 92–93 (noting that the appellants "appealed 'the constructive denia[l]' of the emergency TRO to the Fifth Circuit" (alteration in original) (citation omitted)). And there's no doubt the district court refused to issue a TRO pending a hearing on whether it should issue a preliminary injunction. The district court scheduled a hearing and still has not ruled on the motion.

**3.** The Federal Government has diligently pursued this case while also seeking to collaborate with California to prevent unlawful voting. The Secretary of Homeland Security notified California months ago that noncitizens may be registered to vote. Yet California refused to collaborate with the Federal Government. As soon as Homeland Security Investigations and U.S. Citizenship and Immigration Services concluded

with a high degree of confidence that noncitizens are registered to vote in California (which is memorialized in sworn declarations, *see* Mot. 9), the Federal Government generated a list and shared it with the relevant State officials. California, again, refused to take any action. The United States then sued two days later and sought emergency relief just days after that. And it emphasized the urgency as soon as the California confirmed that it was removing ballots from envelopes. In any event, "a showing of delay does not preclude, *as a matter of law,* a determination of irreparable harm." *See Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1457 (Fed. Cir. 1988)

**4.** Alternatively, should there be any doubt as to the appealability of the district court's constructive denial of the injunctive relief sought by the United States, this Court should exercise its discretion to nevertheless reach the merits of this appeal. *See Environmental Defense Fund, Inc. v. Andrus*, 625 F.2d 861, 862 (9th Cir. 1980). This appeal raises critical and time sensitive questions which, if not heard now, will evade review and result in irreparable harm. *Id.* ("Because important public policy issues are involved and time is of the essence, we exercise our option under Fed. R. App. P. 2 to suspend the normal requirements

of appellate procedure and reach the merits of this appeal.”). Moreover, even if this appeal returns to the district court in the first instance, the losing party will almost certainly bring this dispute right back. This Court should thus deny the motion to dismiss and reach the merits.

## CONCLUSION

This Court should: (1) Grant the Federal Government’s motion for an injunction pending appeal; (2) order an expedited appeal; and (3) hold that the district court lacks jurisdiction pending this appeal.

Dated: October 25, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

*/s/ Julie A. Hamill*

JULIE A. HAMILL
Assistant United States Attorney
J. ROBERT RENNER
Assistant United States Attorney

Attorneys for Plaintiff-Appellant
United States of America

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1459 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook font.

*/s/ Julie A. Hamill*
JULIE A. HAMILL