No. 26-7070

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff and Appellant*,
v.
STATE OF CALIFORNIA; SHIRLEY N. WEBER, *in her official capacity as California Secretary of State*; DEAN C. LOGAN, in his official capacity as the County of Los Angeles – Registrar-Recorder/County Clerk,
*Defendants and Appellees*.

Appeal from the United States District Court for the Central District of California
No. 2:26-cv-12025-DOC-ADS

# APPELLEE DEAN C. LOGAN'S REPLY IN SUPPORT OF HIS EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 TO DISMISS APPEAL FOR LACK OF APPELLATE JURISDICTION

DAWYN R. HARRISON
County Counsel
PETER BOLLINGER
Asst. County Counsel
EVA CHU
Snr. Dep. County Counsel
ADAM BAUMGARTEN
Snr. Dep. County Counsel
648 Kenneth Hahn Hall Of Administration
500 West Temple Street
Los Angeles, California 90012
(213) 974-0809
echu@counsel.lacounty.gov
abaumgarten@counsel.lacounty.gov

SETH P. WAXMAN
DANIEL S. VOLCHOK
Wilmer Cutler Pickering
Hale and Dorr LLP

CHRISTOPHER PELHAM
ABIGAIL URQUHART
ALEX SCANDROLI
Norton Rose Fulbright
555 South Flower Street,
Forty-First Floor
Los Angeles, California 90071
(213) 892-9200
christopher.pelham@nortonrosefulbright.com

TOBY R. MERRILL*
JOSHUA KARSH**
SHARANYA MOHAN
CHRISTINE E. BASS
KYRA SIKORA
Public Rights Project
490 43rd Street, Unit #115
Oakland, California 94609
(510) 738-6788

2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com

M. PATRICK MOORE, JR.***
Wilmer Cutler Pickering
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
pat.moore@wilmerhale.com

MICHAEL J. MONGAN
Wilmer Cutler Pickering
Hale and Dorr LLP
50 California Street, Suite 3600
San Francisco, California 94111
(628) 235-1000
michael.mongan@wilmerhale.com

*** Application for admission forthcoming

toby.merrill@publicrightsproject.org
joshua.karsh@publicrightsproject.org
sai.mohan@publicrightsproject.org
christine.bass@publicrightsproject.org
kyra.sikora@publicrightsproject.org

* Licensed in Massachusetts and New York. Not licensed to practice law in California.

** Licensed in Illinois and Washington, D.C. Not licensed to practice law in California.

*Attorneys for Defendant-Appellee Dean C. Logan in his official capacity as the County of Los Angeles Registrar Recorder/County Clerk*

## INTRODUCTION

Appellant's opposition confirms that its audacious theory for manufacturing appellate jurisdiction fails. There is no emergency here; the complaint asserts that the federal government's interest is to preserve evidence necessary to prosecute purported violations of 18 U.S.C. §611(a). But the relevant evidence is the envelopes proving who voted, not the ballots themselves. Processing mail ballots in the normal course does not alter that evidence. Accordingly, there is no conceivable harm to any actual or potential section 611(a) prosecution that could make the "constructive denial" of the requested temporary restraining order ("TRO") appealable. In any case, there was no constructive denial, because Appellant suffers no cognizable harm that precludes waiting for Tuesday's hearing, which the district court promptly scheduled the same day it received Appellant's request for a ruling *by November 3*. *See* Dkt. 62-1 at 4 (October 21 request for a ruling by November 3); Dkt. 64 (district court's October 21 order setting a hearing on Appellant's motion on October 27).

The lynchpin of Appellant's assertion that a grave emergency warrants skipping over the district court is its claim that, until just a few days ago, it had no idea that California processes mail ballots as they are received. That reflects, at minimum, indifference or inattention to widely available facts at the heart of what it now claims is a grave emergency. ECF 57.1 at 1-2. California's Elections Code

provides for such processing, and Los Angeles County ("County") livestreams its mail-ballot processing on its website, which also explicitly states: "To preserve the secrecy of your ballot, the ballot will … be separated from the return envelope, and then it will be tallied."[1] Appellant cannot "bury its head in the sand" (Dkt. 57.1 at 8) so it can later claim an emergency that allows it to rush right to this Court.

Indeed, on Appellant's theory, Appellant could skip this Court too—and so could every other litigant. After all, Appellant demanded (on Friday) that this Court rule on its motion yesterday (Saturday). Since the Court did not do so, the Court has, in Appellant's view, constructively denied Appellant's request and Appellant could file an emergency application with the Supreme Court at any time. Every other litigant could likewise bury its head in the sand by ignoring public (and widely known) information, claim at the last second that it had belatedly learned that information, demand that a district court (and then court of appeals) thus had to grant it highly disruptive relief more or less immediately, and then, if the courts rightly refused, rush right to the Supreme Court with the same plea. This recipe for judicial (not to mention electoral) chaos, overloading courts with unmanageable emergency appeals, should be firmly rejected.

[1] L.A. Cnty. Registrar-Recorder/Cnty. Clerk, *Official Video Streams*, https://www.lavote.gov/home/voting-elections/current-elections/live-feed.

The appeal should be dismissed immediately for lack of appellate jurisdiction.

**ARGUMENT**

A. Appellant does not defend the original basis for its claimed emergency: the ability to investigate alleged violations of 18 U.S.C. §611(a), the federal statute prohibiting voting by non-U.S. citizens. *See* Dkt.1 ¶¶17-20; Dkt.22-2 at 1-2. That is undoubtedly because the evidence relevant to proving that a non-citizen voted is the mail ballot envelope bearing their signature, and L.A. County's routine ballot processing *does not alter that evidence*, which federal law requires to be preserved for 22 months, *see* 52 U.S.C. §20701; *see also* Cal. Elec. Code §17301(b)(4). Appellant now asserts (Opp.5) an interest not just in "determining whether noncitizens voted but also in "preventing votes cast by noncitizens from being counted." The federal executive has no such interest. Which ballots are counted, and whether a certified result stands, are questions the Constitution and Congress have reserved to the States and, for congressional seats, to each House of Congress. U.S. Const. art. I, §§4-5, amend. X. Section 611 does not disturb that delegation of authority. It is a criminal prohibition aimed at individual voters, not a command to state officials about counting. The opposition's invocation of *Anderson v. United States*, 417 U.S. 211 (1974), proves the point: That case involved criminal convictions for casting fictitious votes. *Id.* at 214-215.

Moreover, as Appellant has told this Court today (Dkt. 57.1 at 14), *other* federal statutes specify when states must "separate[] and h[o]ld apart" ballots, *see* 52 U.S.C. §21082. That shows that Congress knows how to require (or authorize) segregation. Section 611(a) contains no such requirement or authority.

A federal misdemeanor statute simply does not authorize executive branch officials to alter a State's ballot-counting procedures by decree. The argument is boundless; it would allow federal authorities alter or meddle in any election jurisdiction, as federal law also criminalizes various other acts related to voting, such as voting fraudulently (52 U.S.C. §20511(2)(B)) or voting twice (52 U.S.C. §10307(e)). Under Appellant's theory, an administration could, on the eve of an election, suddenly claim that fraud is rampant in selected jurisdictions and thereby order (or get a court to order) election officials to segregate ballots from those jurisdictions until the fraud allegations can be sorted out on Appellant's chosen timeframe—denying large numbers of registered and eligible voters either their fundamental right to vote or the right to be represented by the official they have chosen to elect. Appellant has cited no case from any court giving such a sweeping reading to federal criminal law—a reading starkly inconsistent with recent Supreme Court precedent warning about the overreach of federal criminal law. *E.g.*, *Fischer v. United States*, 603 U.S. 480, 497 (2024). This Court should

not be the first, because that reading is contrary to the constitutional design giving states and localities primary control over elections.[2]

Moreover, Appellant concedes there has been no constructive denial of a motion for preliminary injunction; Appellant is at best appealing from a constructive denial of the motion for a TRO. U.S. Mot.22; Opp.6. But any delay in the district court ruling on Appellant's request for emergency relief was caused by *Appellant's failure* to move more quickly, not the District Court's failure to rule within 18 hours after Appellant suddenly revised its request for a ruling by November 3. Dkt.67. And even if that request was constructively denied, there is not the kind of "high risk of 'serious, perhaps irreparable[]' consequences" that the Supreme Court requires to render denial of a TRO appealable. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam). The petitioners in *A.A.R.P.* faced "an imminent threat of severe, irreparable harm"—imminent deportation to a

---

[2] California has exercised that control. California law limits the franchise to citizens, Cal. Const. art. II, §2; Cal. Elec. Code §2101(a). And it has procedures to enforce that limitation (none of which Appellant tried to use). For instance, before ballots are mailed, a registration must be canceled "[u]pon proof that the person is … ineligible to vote." Cal. Elec. Code §2201(a)(8). And after a mail ballot is received but before the envelope is opened, election officials may challenge a ballot cast by a voter who is "not a citizen of the United States," including upon receipt of "any document or list concerning… voting qualifications." *Id.* §§14240(a)(3), 15105. But that may be done only upon "extraordinary proof" of ineligibility. *Id.* §15106. Finally, after the canvass, any elector may contest the election to prevent certification on the ground "[t]hat illegal votes were cast," *id.* §16100(d), but only if "those votes would change the outcome, *id.* §16203.

jurisdiction from which the federal government claimed it would be unable to recover them—and no cognizable harm from granting the TRO. *Id.* at 93-94. Immediate interlocutory appeal was required because if the detainees were deported, it was possible that "no U.S. court [would later have] jurisdiction to order relief." *Id.* at 93-95.

By contrast, Appellant's requested TRO would not "prevent irreparable harm to the applicant[]," *A.A.R.P.*, 605 U.S. at 97. Appellant's contrary argument assumes that there actually are any non-citizens on its latest list (and that they have unprocessed ballots). Recent experience with this same Appellant's claims of non-citizens being on a State's voter rolls makes that assumption highly suspect. *See* Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sept. 24, 2026), https://tinyurl.com/4685w5x4; *see also* Dkt.32-3 ¶¶24-25. But more fundamentally, as explained, there is no possible prejudice to any section 611 prosecution from allowing the processing of ballots, because California will preserve all the relevant evidence. There is prejudice on the other hand that will be created by *granting* Appellant's requested relief—and this is part of what differentiates this case from *A.A.R.P.*, on which Appellant's opposition relies—is depriving registered and otherwise-eligible *citizens* of their fundamental right to vote in this election.

B. Even if the denial of a TRO were appealable, Appellant's opposition confirms that there was no constructive denial here, because any emergency is of Appellant's own making. This Court has warned that "[a] party may not engage in manipulation… to create appellate jurisdiction." *American States Insurance Co. v. Dastar Corp.*, 318 F.3d 881, 885 (9th Cir. 2003). That is precisely what Appellant has done here.

As Appellant concedes, the federal government had what it believed to be California's voter roster as early as May 8, 2026. Mot.15-16. In July, DHS Secretary Mullin wrote to Secretary Weber saying that a "[p]reliminary review" suggested "there may be as many as 190,832 non-citizens registered to vote in California." Dkt. 1-1. Secretary Weber promptly requested additional information "to evaluate the veracity of [Mullin's] allegations," but *Secretary Mullin never responded*. Dkt. 1-2. No federal official initiated any challenge to registered voters' qualifications under the procedures described above. Secretary Weber's response also noted that the National Voter Registration Act's 90-day "quiet period," which prohibits "systematic cancellation of voter registrations during the 90 days before each federal election," would begin on August 5. *Id.*; *see* 52 U.S.C. 20507(c)(2)(A). Despite California's invitation to Appellant to substantiate its claims, neither Secretary Mullin nor any other federal official ever responded. Appellant's claim (Opp.6) that "California refused to collaborate with the Federal

Government" following Secretary Mullin's July letter is thus false and contradicted by the record. Meanwhile, the County opened mail-ballot drop boxes on October 1 and began processing mail ballots on October 5, Dkt.32-4 ¶24, all consistent with California law, Cal. Elec. Code §15101(a). Eight days later, Appellant hand-delivered a thumb drive to the County with what it said were the "names of people the Federal Government believes are likely noncitizens who were sent a [mail] ballot." Dkt.1-4. Appellant provided *no supporting evidence*, much less "extraordinary proof," Cal. Elec. Code §15106, yet it demanded a response within 48 hours. *See* Dkt. 1-4. Appellant then filed this lawsuit minutes after its unilaterally imposed deadline passed, without mentioning that L.A. County *had* responded. *See* Dkt.1; Dkt.32-2-Ex.D. Appellant then waited four more days to move for preliminary relief, requesting a ruling "by **November 3, 2026**." Dkt.22-2 at 4. And the district court promptly set a hearing for October 27 after Appellant filed its TRO motion, Dkts.62 & 64. But barely two hours later, Appellant asked the District Court rule "by noon" the next day, assertedly because it was previously "unaware" of the ballot-processing provisions of California's Elections Code. Dkt.67 at 2; Opp.2. In short, this supposed emergency is entirely "self-inflicted," *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020). That was not the case in *A.A.R.P.*—yet another reason that *A.A.R.P.'s* holding regarding appellate jurisdiction does not apply here.

Appellant is also wrong (Opp.7) that this Court has "discretion" to reach the merits if it lacks appellate jurisdiction. "The court of appeals is a court of limited jurisdiction, and its jurisdiction is expressly provided for by statute." *United States v. Al-Nouri*, 983 F.3d 1096, 1098 (9th Cir. 2020) (quotation marks omitted). And all federal courts "have an obligation to ensure that jurisdiction exists *before* proceeding to the merits." *City & County of San Francisco v. United States Citizenship & Immigration Services*, 944 F.3d 773, 786 (9th Cir. 2019) (emphasis added); *accord Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Nor does *Environmental Defense Fund, Inc. v. Andru*s, 625 F.2d 861, 862 (9th Cir. 1980), create any exception to this fundamental principle. Ordinarily, an appeal does not lie from the denial of an application for a TRO. In *Andrus*, this Court diverged from this default rule, holding that "[t]he denial of a request for a [TRO] is appealable where… the denial of the [TRO] is tantamount to the denial of a preliminary injunction." *Id.* But "the denial of [a] TRO [is] tantamount to the denial of a preliminary injunction" only if two factors are satisfied: "the denial of the TRO followed a 'full adversary hearing' and 'in the absence of review, the appellants would be effectively foreclosed from pursuing further interlocutory relief.'" *Religious Technology Center, Church of Scientology International, Inc. v. Scott*, 869 F.2d 1306, 1308 (9th Cir. 1989) (quoting *Andrus*, 625 F.3d at 862). That standard is not met here.

Indeed, *Andrus* is also inapplicable because there has not been a denial of a TRO; the Appellant's TRO motion is still pending in the district court. Regardless, the Appellant cannot satisfy either *Andrus* factor. *First*, the district court has not denied or even ruled on Appellant's TRO motion, nor has it yet held an adversary hearing on the motion. *Second*, Appellant has not been effectively foreclosed from pursuing further interlocutory relief. If the district court denies Appellant's TRO motion this Tuesday after a full adversary hearing, Appellant may be able to pursue interlocutory relief then. And if the Appellant decides to file a motion for preliminary injunction and the district court denies it, Appellant can certainly pursue an interlocutory appeal, *see* 28 U.S.C. §1292(a)(1). To be clear, any interlocutory appeal would be misguided because the Appellant's claimed emergency is non-existent—California has not changed any election laws or procedures, Appellant has known (or is charged with knowing) about California's election laws and procedures for years, and the County is fully complying with federal law. Nevertheless, Appellant has several options for pursuing interlocutory relief if the district court (correctly) rules against it. *Andrus* thus does not support Appellant's position because Appellant has not satisfied its prerequisite requirements. This Court recently reached the same conclusion in *Nguyen v. U.S. Bank National Association*, explaining that the "district court's denial of Nguyen's motion for a TRO is not reviewable on appeal because it was not 'tantamount to

the denial of a preliminary injunction.…' Accordingly, we lack jurisdiction to hear this appeal," 2026 WL 1122236, at *1 (9th Cir. Apr. 24, 2026) (quoting *Andrus*, 625 F.2d at 862). The same conclusion is warranted here.

Put simply, Appellant's logic would create a route for litigants to delay seeking injunctive relief and then leverage that delay to skip over the district court to seek injunctive relief in the first instance from this Court or the Supreme Court—and do so by burying their heads in the sand until the last minute (when they can claim an emergency, and when, as in this case, relief would inevitably and wrongly deny the right to vote to eligible voters). This Court should not allow such manipulative tactics to give rise to appellate jurisdiction.

**CONCLUSION**

The Court should dismiss the appeal for lack of appellate jurisdiction.

October 25, 2026

Respectfully submitted,

*/s/ Christopher Pelham*

CHRISTOPHER PELHAM
ABIGAIL URQUHART
ALEX SCANDROLI
Norton Rose Fulbright
555 South Flower Street,
Forty-First Floor
Los Angeles, California 90071
(213) 892-9200
christopher.pelham@nortonrose
fulbright.com

DAWYN R. HARRISON
County Counsel
PETER BOLLINGER
Asst. County Counsel
EVA CHU
Snr. Dep. County Counsel
ADAM BAUMGARTEN
Snr. Dep. County Counsel
648 Kenneth Hahn Hall Of Admin.
500 West Temple Street
Los Angeles, California 90012

(213) 974-0809
echu@counsel.lacounty.gov
abaumgarten@counsel.lacounty.gov

SETH P. WAXMAN
DANIEL S. VOLCHOK
Wilmer Cutler Pickering
Hale and Dorr LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com

M. PATRICK MOORE, JR.***
Wilmer Cutler Pickering
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
pat.moore@wilmerhale.com

MICHAEL J. MONGAN
Wilmer Cutler Pickering
Hale and Dorr LLP
50 California Street, Suite 3600
San Francisco, California 94111
(628) 235-1000
michael.mongan@wilmerhale.com

*** Application for admission forthcoming

TOBY R. MERRILL*
JOSHUA KARSH**
SHARANYA MOHAN
CHRISTINE E. BASS
KYRA SIKORA
Public Rights Project
490 43rd Street, Unit #115
Oakland, California 94609
(510) 738-6788
toby.merrill@publicrightsproject.org
joshua.karsh@publicrightsproject.org
sai.mohan@publicrightsproject.org
christine.bass@publicrightsproject.org
kyra.sikora@publicrightsproject.org

* Licensed in Massachusetts and New York. Not licensed to practice law in California.

** Licensed in Illinois and Washington, D.C. Not licensed to practice law in California.

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of the Federal Rules of Appellate Procedure and Circuit Rules because, according to the word-count feature of the word-processing system used to prepare this opposition (Microsoft Word), the opposition contains 2,536 words that count against the limit.

/s/ Christopher Pelham
CHRISTOPHER PELHAM

## CERTIFICATE OF SERVICE

On this 25th day of October, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Christopher Pelham
CHRISTOPHER PELHAM